**MANILDRA MILLING CORPORATION, Plaintiff,**

v.

**OGILVIE MILLS, INC., Defendant and Third–Party Plaintiff,**

v.

**HENKEL CORPORATION and Henkel of America, Inc., Defendants and Third–Party Defendants.**

**Civ. A. No. 86–2457–O.**

United States District Court, D. Kansas.

Aug. 6, 1990.

Edward L. Bailey, Carol B. Bonebrake, Charles T. Engel, Cosgrove, Webb & Oman, Topeka, Kan., Charles D. Horner, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., W. Stanley Walch, Mark Sableman, Thompson & Mitchell, St. Louis, Mo., William K. West, Wayne Jones, Cushman, Darby & Cushman, Washington, D.C., Tim S. Haverty, Dennis L. Davis, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, Mo., Murray J. Belman, Thompson & Mitchell, Washington, D.C., for plaintiff and counterdefendants.

Robert D. Benham, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., Bruce H. Weitzman, McDermott, Will & Emery, Chicago, Ill., Eugene Sabol, Paul Grandinetti, Mark Lee Hogge, Fisher, Christen & Sabol, Washington, D.C., Byron L. Gregory, McDermott, Will and Emery, Chicago, Ill., for defendant and third-party plaintiff.

---

Michelle M. Suter, McDowell, Rice & Smith, P.C., Overland Park, Kan., Robert P. Smith, McDowell, Rice and Smith, Kansas City, Mo., John D. Gould, Daniel W. McDonald, Alan G. Carlson, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., Robert L. Baechtold, David F. Ryan, Fitzpatrick, Cella, Harper & Scinto, New York City, for defendants and third-party defendants.

## MEMORANDUM AND ORDER

### EARL E. O'CONNOR, Chief Judge.

This matter is before the court on defendant Ogilvie Mills, Inc.'s, ("Ogilvie's") motion to reconsider and correct inventorship. Defendants Henkel Corporation and Henkel of America, Inc., ("Henkel") have also filed a motion for reconsideration. On June 6, 1989, the court issued an order denying Ogilvie's motion to correct inventorship of three patents pursuant to 35 U.S.C. § 256. For the reasons set forth below, the court finds it appropriate to rescind the order of June 6, 1989, and defer a ruling on the motion to correct inventorship until after trial.

## FACTUAL BACKGROUND

Without describing the lengthy and complex factual situation giving rise to this litigation, the court finds the following facts relevant for purposes of this order. Prior to 1971, arrowroot starch was commonly used as a stilt material in the manufacture of carbonless copy paper. Specifically, arrowroot starch particles and microcapsules containing a dye-producing agent were mixed together and applied to the surface of the paper. The arrowroot starch particles, because of their larger size in comparison to the microcapsules, prevented premature crushing or rupturing of the microcapsules.

In 1971, because of the scarcity of arrowroot starch, carbonless copy paper producers began to search for a substitute stilt material. Among the producers seeking an arrowroot starch substitute was the A.E. Staley Manufacturing Company ("Staley"). A group of Staley employees, headed by Dr. D.L. Johnson, developed the idea of using large granule wheat starch as a substitute stilt material and, after considerable effort, developed the process for producing the large granule wheat starch.

To briefly summarize the development process, Dr. Johnson first conceived the idea of using large granule wheat starch as a stilt material. Dr. Johnson, Dennis Adkesson, and others at the Staley research and development laboratories in Decatur, Illinois, then began work on developing a method for producing the starch. Adkesson was later dispatched to the Staley production plant in Columbus, Ohio, to continue work on the project. After a short time at Columbus, Adkesson left Staley and entered the Army. Three other Staley employees, John Bond, John Salter, and Saul Rogols, then continued the project at Columbus and successfully completed the development of the process for producing the new large granule wheat starch.

In August and September of 1971, Staley's in-house patent attorney, Howard Barnett, prepared and filed a patent application based on the newly developed stilt material. In the patent application, Barnett listed only Bond, Salter, and Rogols as inventors. Johnson was not listed because Barnett allegedly believed that a person, to be named an inventor, had to be present at the successful reduction to practice. Adkesson was not listed because Barnett was allegedly under the impression that Adkesson was simply an assistant to Johnson.

Three patents have since issued from the basic application filed in 1971 by Barnett: patent no. 3,901,725 ("725") covers claims for large granule starch fractions of wheat, rye, or barley starch and the processes for producing such fractions; patent no. 3,951,948 ("948") covers claims for modified forms of the large granule wheat starch fractions; and patent no. 4,280,718 ("718") covers claims for paper coated with rupturable microcapsules and, as stilt material, the large granule wheat starch fractions.

In 1975, at the direction of his supervisor, Barnett conducted another investigation to determine if Johnson should be add-

ed to any of the patents as an inventor. After collecting information and contacting the Patent Office, Barnett prepared and filed papers to add Dr. Johnson as an inventor to the carbonless copy paper patent (which would later become 718). Barnett allegedly did not attempt to add Johnson to the remaining two patents because, under the "all claims" rule in effect at the Patent Office, Barnett did not believe that Johnson qualified as an inventor of the production process.

In November of 1978, Staley sold the three patents to Henkel. In early 1979, a third inventorship investigation was conducted by attorney Forrest Collins. Following a four to five months investigation, Collins allegedly decided that the patents were correct and thus did not make any attempt to change inventorship.

On August 19, 1988, Dennis Adkesson's deposition was taken for purposes of the instant litigation. At that time, Adkesson stated that he thought that he was a joint inventor of the three patents. Ogilvie subsequently conducted an investigation into the inventorship of the three patents and filed their motion to correct inventorship.

## PROCEDURAL BACKGROUND

On June 6, 1989, the court issued an order denying Ogilvie's motion for correction of inventorship. In so doing, the court noted that it was satisfied that Adkesson and Johnson were joint inventors of the patents at issue and that the failure to name them as joint inventors was not with deceptive intention. However, the court determined that the failure to name Adkesson and Johnson as joint inventors was not due to inadvertent error. Rather, the court found that the failure was the result of a deliberate decision or gross negligence on the part of Barnett and Collins, the two attorneys who were responsible for the patent applications.

Ogilvie and Henkel have since filed motions for reconsideration of the court's June 6, 1989, order. Both parties contend that the court has made a mistake of law with respect to the law applicable to the court's factual findings. Both parties also

assert that, contrary to the court's findings, Barnett and Collins acted in good faith and conducted thorough inventorship investigations.

## DISCUSSION

The controlling statute for correction of inventorship is 35 U.S.C. § 256, which provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

■ As stated in the court's order of June 6, 1989, the court, in its discretion, may order the requested correction if it appears that the movant can prove by clear and convincing evidence that the three prerequisites of section 256 are satisfied: (1) the omitted person was a true joint inventor; (2) the joint inventor was omitted by error; and (3) the omission was without deceptive intent on his part. *Hamilton Cosco, Inc. v. Century Products, Inc.*, 305 F.Supp. 1271, 1272 (N.D.Ohio 1969).

1. True Joint Inventors; Without Deceptive Intent

The court, after reviewing the materials submitted by the parties in this matter, finds it necessary to rescind its previous conclusions with respect to the first and third prerequisites of section 256. In the order of June 6, 1989, the court stated that it was "satisfied that Messrs. Adkesson

and Johnson were joint inventors of the patents at issue and that the failure to name them as joint inventors was not with deceptive intention." In light of the complex factual issues involved in this matter, the court finds it appropriate to defer a ruling on these issues until after the trial of this matter.

### 2. Omission By Error

█ In the order of June 6, 1989, the court held that section 256 was intended to correct only "innocent, inadvertent errors," and not any errors resulting from "deliberate decisions" or "gross negligence". As support for this construction, the court relied upon *Rival Manufacturing Co. v. Dazey Products Co.*, 358 F.Supp. 91, 101 (W.D.Mo.1973), in which the United States District Court for the Western District of Missouri stated:

The requirement of Title 35, U.S.Code, Section 256, that a correctable defect must be the result of "error" does not extend its remedy to defects resulting from deliberate decisions, intentional courses of misconduct or gross negligence in avoidance of correction on the part of responsible knowledgeable parties having full notice of the facts and their legal significance.

*Rival Manufacturing*, 358 F.Supp. at 101–02. Armed with this construction of section 256, the court then held that Ogilvie had failed to demonstrate that the omission of Adkesson and Johnson as inventors was the result of an inadvertent error, rather than a deliberate decision or gross negligence on the part of Barnett or Collins.

After careful review, the court finds that its interpretation and application of Rival was erroneous. In relying on Rival for the proposition that the term "error" does not encompass deliberate decisions or gross negligence, the court essentially ignored the portion of the above-quoted language which states "in avoidance of correction on the part of responsible knowledgeable parties having full notice of the facts and their

legal significance." In light of the fact that *Rival* involved fraud and a lack of good faith on the part of the patent applicants, the court finds that the above-quoted language from *Rival* is properly interpreted to exclude from the definition of "error" only those actions which are taken (or not taken) to avoid correction after the inventors, their employers, and/or their attorneys become aware that the patent or patent application is incorrect.[1] Accordingly, *Rival* is inapplicable in this case because there is simply no evidence that would indicate that anyone, including Barnett and Collins, acted "in avoidance of correction."

Notwithstanding the court's interpretation of Rival, the court recognizes that in *John Blue Co. v. Dempster Mill Mfg. Co.*, 172 F.Supp. 23 (D.Neb.1958), upon which the *Rival* court relied, the United States District Court for the District of Nebraska distinguished between errors resulting from inadvertence, accident, or mistake and those resulting from errors in judgment, and held that only the former are correctable under section 256. However, as Ogilvie and Henkel point out, John Blue and its progeny have been rejected by the Court of Customs and Patent Appeals (now the Court of Appeals for the Federal Circuit). *In re Schmidt*, 293 F.2d 274, 278–79 (C.C.P.A.1961) (holding that §§ 116 and 256 should be given a liberal construction in favor of applicants). Because the Court of Appeals for the Federal Circuit has jurisdiction over this case,[2] the court finds that Schmidt is controlling in this matter.[3]

IT IS THEREFORE ORDERED that Ogilvie's and Henkel's motions for reconsideration are granted in part.

IT IS FURTHER ORDERED that the court's order of June 6, 1989, is hereby rescinded.

---

1. In effect, the Rival court gave definition to the expression "error ... without any deceptive intention".

2. 28 U.S.C. §§ 1292(c), 1295.

3. In light of the difficulties encountered in determining whether a patent is the work of one or several joint inventors, the court also finds the liberal approach espoused by Schmidt to be more persuasive than the restrictive view taken in John Blue.